# IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MARDOCHE T. KABUMVU,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )      **Case No. CIV-26-1056-R** |
| | ) |
| **FRED FIGUEROA, et al.,**[1] | ) |
| | ) |
| **Respondents.** | ) |

## REPORT AND RECOMMENDATION

Petitioner Mardoche T. Kabumvu, a noncitizen,[2] seeks a writ of habeas

corpus under 28 U.S.C. § 2241. Doc. 1.[3] United States District Judge David L.

Russell referred the case to the undersigned Magistrate Judge under 28 U.S.C.

§ 636(b)(1)(B), (C). Doc. 4. The Government responded to the petition, Doc. 11,

and Petitioner replied, Doc. 12. So the matter is at issue.

---

[1]    Respondent Fred Figueora, Warden of the Diamondback Correctional Facility, is not a federal official and the response is not filed on his behalf. Doc. 11, at 5 n.1.

[2]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons set forth below, the undersigned recommends the Court grant Petitioner's request for immediate release subject to an appropriate Order of Supervision (OOS).

## I.      Factual background and procedural history.

Petitioner, a native and citizen of the Democratic Republic of Congo, entered the United States on an F1 student visa on August 2, 2011. Doc. 11, at 5 & Ex. 3, at 2. That visa expired on February 27, 2012. *Id*. Ex. 3, at 2. The Department of Homeland Security (DHS) issued Petitioner a Notice to Appear (NTA) that charged him as removable under the Immigration and Nationality Act (INA) § 237(a)(1)(B), for remaining in the United States for a time longer than permitted. Doc. 11, at 5-6. Petitioner failed to appear on July 16, 2019, and an Immigration Judge (IJ) ordered him removed in absentia. *Id*. at 6 & Ex. 1.

On May 29, 2020, Immigration and Customs Enforcement (ICE) permitted Petitioner to remain in the country under an OOS. Doc. 1, at 6 & Ex. 2. On November 4, 2025, ICE took Petitioner into custody. Doc. 1, at 7; Doc. 11, at 6. On January 12, 2026, Petitioner filed to reopen his removal proceedings and an emergency motion to stay the removal, which the Immigration Court denied. Doc. 11, at 6 & Ex. 1. Petitioner states he timely appealed that denial to the Board of Immigration Appeals (BIA). Doc. 1, at 7; Doc. 12, at 2-3 & Ex.

1 (filing receipt for appeal). But no pending matters appear on the Executive Office of Immigration Review's (EOIR) Automated Case Information website.[4] *See* Doc. 12, at 3 n.1.

Deportation Officer Romeo Foncha states in his declaration to the Court that ICE is currently compiling the documents needed for a travel documents request, and that the package was expected to have been completed and submitted to the Democratic Republic of Congo by June 5, 2026. Doc. 11, Ex. 3, at 2.

## II.   Petitioner's claims.

Petitioner asserts two grounds for relief:

(1)   Unlawful detention under 8 U.S.C. § 1231(a)(6) and *Zadvydas*;[5]

(2)   Fifth Amendment Due Process violation based on prolonged detention without meaningful review.

Doc. 1, at 12-14.

Regarding *Zadvydas*, he argues that he has been subject to a final order of removal since July 16, 2019, and despite this, Respondents have not secured travel documents, identified a removal date, or provided an operational plan to

---

[4]   *See* https://acis.eoir.justice.gov/en/caseInformation/ (last visited July 2, 2026).

[5]   *Zadvydas v. Davis,* 533 U.S. 678, 687 (2001).

remove Petitioner. *Id.* at 12. He also argues that no material change in circumstances has occurred justifying his detention. *Id.* at 14.

He seeks to not be transferred outside this district while this case is pending; asks the Court to issue a show cause order requiring Respondents to file a speedy response, require Respondents to provide notice before his removal or any attempted removal;[6] declare his detention unlawful; order his immediate release "under reasonable conditions of supervision," or in the alternative provide him a prompt bond hearing before a neutral IJ where the Government bears the burden of proving by clear and convincing evidence that continued detention is necessary. *Id.* at 15.

## III.  Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 474, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort,* 388 F.3d

---

[6]    The Court addressed these issues in its Order for a Response. *See* Doc.8.

1305, 1310 (10th Cir. 2004) (citing *Zadvydas,* 533 U.S. at 687); *see also Zadvydas*, 533 U.S. at 687 ("[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases.").

## IV.   Analysis.

### A.   The Court should grant relief under *Zadvydas.*

Petitioner contests his prolonged detention after the IJ's final order of removal. Doc. 1, at 12. Under 8 U.S.C. § 1231(a)(1)(a) "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (. . . the 'removal period')." "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A).

The removal period begins on the latest of the following dates:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B). A removal order becomes administratively final when the BIA affirms it or the time for seeking review has expired. 8 U.S.C. § 1101(a)(47)(B); *Riley v. Bondi*, 606 U.S. 259, 267 (2025).

5

Petitioner has an administratively final order of removal,[7] but the Government did not effect his removal within the statutory 90-day removal period. *See* Doc. 1, Ex. 1, at 1 (releasing Petitioner on an OOS because "the agency [had] not effected [his] deportation or removal during the period prescribed by law"). "Petitioner, nonetheless, is subject to continued detention after expiration of the removal period pursuant to 8 U.S.C. § 1231(a)(6)." *Khaliq v. Noem*, No. CIV-25-1154-SLP, 2026 WL 196631, at *6 (W.D. Okla. Jan. 26, 2026).

Under § 1231(a)(1)(C), the removal period may be extended "and the [noncitizen] may remain in detention during such extended period if the [noncitizen] fails or refuses to make timely application in good faith for travel or other documents . . . or conspires or acts to prevent the [noncitizen's] removal." "[T]he statute [also] provides that [a noncitizen] may be detained beyond the removal period or released under supervision if he is (1)

---

[7]   Petitioner's motion to reopen, which the IJ denied, does not render his removal order either non-final or non-executable. *See, e.g.*, 8 C.F.R. § 241.4(b)(1) ("An alien who has filed a motion to reopen immigration proceedings for consideration of relief from removal, including withholding or deferral of removal pursuant to 8 CFR 208.16 or 208.17, shall remain subject to the provisions of this section unless the motion to reopen is granted."); *cf. Johnson v. Guzman Chavez*, 594 U.S. 523, 540 (2021) ("Because the validity of removal orders is not affected by the grant of withholding-only relief, an alien's initiation of withholding-only proceedings does not render non-final an otherwise 'administratively final' reinstated order of removal.").

inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order." *Johnson*, 594 U.S. at 528-29 (citing 8 U.S.C. § 1231(a)(6) and 8 CFR § 241.4 (setting out procedures DHS must follow to impose continued detention)). "Continued detention under this provision creates the 'post-removal-period.'" *Id.* at 529.

If ICE opts for continued detention, the agency is not authorized to hold the noncitizen indefinitely. *See Zadvydas*, 533 U.S. at 697, 699. In *Zadvydas*, the Supreme Court made clear that detention under § 1231 is authorized only so long as it is "reasonably necessary to secure [the noncitizen's] removal." *Id.* at 699. Such detention is "presumptively reasonable" for up to six months. *Id.* at 701. Reasonableness is measured by looking to the statute's basic purpose, which is assuring the noncitizen's presence at the moment of removal. *Id.* at 699.

After the expiration of that period, the detainee may bring a habeas action to challenge his detention. *Id.* at 684-85, 688. To obtain habeas relief, the petitioner has the initial burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Presuming the petitioner does so, the burden shifts,

7

requiring "the Government [to] respond with evidence sufficient to rebut that showing." *Id.*

"The six-month presumption 'does not mean that every alien not removed must be released after six months.'" *Khaliq*, 2026 WL 196631, at *6. "Nevertheless, 'for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.'" *Id.* (quoting *Zadvydas*, 533 U.S. at 695). "What constitutes a significant likelihood of removal and how to measure the reasonably foreseeable future . . . is incapable of any bright-line delineation." *Id.* (internal quotation marks omitted). Thus, to determine whether a noncitizen's post-removal detention becomes unconstitutional, "[c]ourts have looked to whether the mere passage of time is sufficient, whether the petitioner's case fits within certain defined circumstances, or whether the petitioner is similarly situated to the two petitioners in *Zadvydas*." *Id.* (footnote omitted).[8] "Within this judicial district, judges . . . have also looked to whether the petitioner has demonstrated 'institutional barriers to repatriation

---

[8]    The *Zadvydas* petitioners were effectively trapped in a "removable-but-unremovable limbo," *Jama v. ICE*, 543 U.S. 335, 703 (2005), as one originated from a country which the United States did not have a repatriation agreement with, and the other "was literally a man without a country" as "he was born in a refugee camp in Germany in 1948." *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002).

or obstacles particular to his removal.'" *Id.* (quoting *Dusabe v. Jones*, No. 24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024), *adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025)).

Respondents argue Petitioner filed his petition before his detention reached six months. Doc. 11, at 18. Not true, as Petitioner was detained on November 4, 2025, and he filed his petition on May 10, 2026. Doc. 1, at 2; Doc. 11, at 6. Petitioner's detention reached the six-month detention period in May 2026, and that period continues to grow. Thus, the six-month period of "presumptively reasonable" detention under *Zadvydas* has expired. 533 U.S. 678 at 701. Still, Petitioner must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Petitioner has met his burden in this case.

Respondents re-detained Petitioner more than six months ago. They had previously released him on an OOS in 2020 because they could not timely effect his removal. Doc. 1, Ex. 2. Petitioner does not have travel documents for the Democratic Republic of Congo and there is no removal date in place. Doc. 1, at 12. Respondents have also represented to him that they will not pursue his removal until the BIA decides his motion to reopen. *Id.* at 13. So, with no removal date in sight, Petitioner asserts there is good reason to believe that

there is no significant likelihood of his removal in the reasonably foreseeable future. *Id.*

In an attempt to rebut Petitioner's showing, Officer Foncha states a travel request is pending. Doc. 11, Ex. 3, at 2. But the record does not show that ICE has either submitted any requests to the embassy for the Democratic Republic of Congo or obtained travel documents for that country on Petitioner's behalf. *See* Doc. 12, at 7.[9] And Officer Foncha admits that ICE cannot effectuate Petitioner's removal until it has obtained those travel documents. *See* Doc. 11, Ex. 3, at 2 ("To effectuate the subject's removal from the United States, a travel document is required from the subject's Country of Citizenship (COC)."). As to the likelihood of Petitioner's removal to the Democratic Republic of Congo, Officer Foncha reports that ICE made 20 removals to that country in 2024, 65 in 2025, and 48 in 2026. *Id.*

There is no suggestion that Petitioner is somehow at fault for the delay under 8 U.S.C. § 1231(a)(1)(C) and has not acted in good faith. Nonetheless, Respondents take issue with Petitioner having argued in his motion to reopen that his removal was imminent, which the IJ rejected. *Id.* at 17. But, as

---

[9]    The Court ordered Respondents to update the Court as necessary on Petitioner's status throughout the pendency of this proceeding. *See* Doc. 8. Respondents have submitted no update regarding a completed travel document request.

Petitioner points out, the factual posture of the case has changed, so he is neither playing fast and loose with the Court nor misrepresenting his position. Doc. 12, at 5. Respondents also argue his removal to *Pakistan* is imminent, which is clearly incorrect. *Id.* at 15.

The undersigned agrees with Petitioner that Respondents have not rebutted his argument that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. Doc. 12, at 7-9. To sustain its burden, the Government must offer more than "generalized evidence." *Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at * 5 (W.D. Okla. Mar. 20, 2026). It must actually make legitimate progress towards removal. *See Hassoun v. Sessions*, 2019 WL 78984, at *5 (W.D.N.Y. Jan. 2, 2019) ("[T]he reasonableness of Petitioner's detention turns on whether and to what extent the government's efforts are likely to bear fruit. Diligent efforts alone will not support continued detention.").[10] Respondents have demonstrated no progress towards Petitioner's removal to the Court.

---

[10]    Petitioner also argues that: "Respondents also fail to address current country-specific and travel-related impediments to removal to the Democratic Republic of the Congo. The Centers for Disease Control ("CDC") has issued a Level 3 Travel Health Notice for travel to the Democratic Republic of the Congo due to the Ebola outbreak, and WHO has determined the outbreak to be a public health emergency of international concern." Doc. 12, at 8.

The undersigned finds Respondents have not met their burden of demonstrating Petitioner's removal is significantly likely in the reasonably foreseeable future. So his continued detention is unconstitutional. *Zadvydas*, 533 U.S. at 701. Accordingly, the undersigned recommends the Court grant Petitioner's habeas petition and order his immediate release subject to an appropriate OOS. *See Bui*, 2026 WL 788947, at *6 (ordering the petitioner's immediate release "subject to an appropriate Order of Supervision").

**B.     Respondents also improperly revoked Petitioner's OOS when they failed to give him notice or an interview upon revocation.**

In Ground Two, Petitioner alleges Respondents have not provided him with the reasons for the revocation of his OOS or any reason for his continued detention. Doc. 1, at 13-14. Respondents admit they did not follow procedure in revoking Petitioner's OOS but argue any error was harmless. Doc. 11, at 11. The undersigned finds that Respondents violated their regulations in revoking Petitioner's OOS and re-detaining him.

In his declaration to this Court, Detention Officer Foncha does not state that ICE gave Petitioner notice or an interview when it detained Petitioner or provided him with any reason for his detention. Doc. 11, Ex. 3. So Respondents did not provide Petitioner adequate notice. *See, e.g.*, *Bui*, 2026 WL 788947, at

12

*3 (Section 241.13(i)(3) "requires not just notice, but notice that specifies 'the reason for revocation of his or her release.'").

"The Government's ability to detain, release, and revoke the release of noncitizens subject to removal orders is governed by specific regulations." *Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *1 (W.D. Okla. Apr. 30, 2026) (quoting *Phongsavanh v. Williams*, 809 F. Supp. 3d 864, 867 (S.D. Iowa 2025)). Under 8 C.F.R. § 241.13(i), "federal authorities may revoke an order of supervised release and 'return the alien to custody' 'if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.'" *Tran*, 2026 WL 1181700, at *2 (quoting 8 C.F.R. § 241.13(i)(2)). "Alternatively, an order of supervision may be revoked if the noncitizen "violates any of the conditions of release." *Id.* (quoting § 241.13(i)(1)). "Revocation *for either* reason triggers a notification requirement and a review process." *Id.* (emphasis added).

> Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, ***or that he or she has not violated the order of supervision***. The revocation custody review will include an evaluation of any contested facts

13

> relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3) (emphasis added). As is apparent from the regulation's language, Respondents' revocation of Petitioner's OOS for no apparent reason did, in fact, trigger the review process in subsection three. *Tran*, 2026 WL 1181700, at *2. So, contrary to Respondents' assertions, they were required to provide both notice and an interview to Petitioner upon revoking his OOS.

When Respondents re-detained Petitioner in November 2025, they failed to give him proper notice, or a prompt informal interview as required by 8 C.F.R. § 241.13(i). "[S]uch regulatory defects amount to due process violations that entitle a petitioner to habeas relief.'" *Tran*, 2026 WL 1181700, at *3 (internal quotation marks omitted) (distinguishing *Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932, at *3 (W.D. Okla. Oct. 31, 2025)).

## V.     Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's petition for writ of habeas corpus, Doc. 1, and order his immediate release from custody within three business days, subject to an appropriate OOS. **The undersigned further recommends that the Court order Respondent certify compliance by filing a status report within ten business days of the Court's order.**

14

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 10, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[11] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 7th day of July, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[11] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").